OLD LINE AUTOMOBILE INSURORS *v.* KUEHL, CRABB

[No. 18,895. Filed April 26, 1957. Rehearing denied May 28, 1957.]

*Dix, Dix, Patrick & Ratcliffe,* of Terre Haute, for appellant.

*John J. Thomas,* of Brazil, for appellee, Kuehl.

ROYSE, J.—Appellee Kuehl brought this action against appellant and appellee Crabb as agent of appellant on an automobile liability policy. Trial to the court. Appellee Crabb did not appear in person or by counsel and was defaulted. (Hereinafter he will be referred to as Crabb.) At the conclusion of appellee's evidence appellant moved for judgment in its favor. This motion was overruled and appellant rested without submitting any evidence. Judgment in favor of appellee for $260.00 and costs.

The error assigned here is the overruling of appel-

lant's motion for a new trial. The specifications of that motion not waived are, that the decision of the trial court is not sustained by the evidence and is contrary to law.

The facts as disclosed by the record may be summarized as follows: For sometime prior to May, 1949 appellee owned a 1941 Studebaker. Through Crabb he obtained a policy of insurance on that car. In the last mentioned month he bought a two-door 1941 Dodge sedan. He kept the Studebaker and because the Dodge was in better running condition he used it and through Crabb had his insurance with appellant transferred to cover the Dodge instead of the Studebaker. Thereafter, and prior to July 6, 1949, through Crabb he purchased the policy from appellant that is the subject of this action. He received from appellant the following receipt:

### OLD LINE AUTOMOBILE INSURORS
12th Floor Merchants Bank Bldg.,
Indianapolis, Indiana

### RECEIPT

| Agent | Date | Policy No. | Application Fee on | No. Coverages | App. Fee Due |
|---|---|---|---|---|---|
| | | | | Coverages | |
| Don. R. Crabb | 7/6/49 | 43443 | Dodge | 3 | $17.00 |

Old Line         This is application
Auto     John Kuehl    fee from
Insurors   R. R. No. 1   July 6, 1949
Indianapolis Brazil,       to
OLD LINE  Indiana     July 6, 1950

PAID
July 6, 1949
OLD LINE
Automobile Insurers   CW

This receipt covers application fee only—in case of loss, additional premium becomes due and payment must be paid at once to home office." [1]

At the same time he received appellant's policy insuring him against public liability, property damage, with a comprehensive coverage, wherein it was shown the application fee was $17.00 and the annual premium cost $44.00 The policy carried the usual provisions. It showed the expiration date of July 6, 1950 and named Crabb as agent.

About August 1, 1949 appellee borrowed money from the American Security Company on the Dodge. He took collision insurance on that car through that Company and let Crabb continue the liability and property damage with appellant. Later in the same month he received a letter from appellant saying they would cancel his insurance if the payment of premium due was not made by September 6, 1949. On September 1, 1949 he paid Crabb $15.00 and took Crabb's receipt therefor. This recipt is as follows:

"Pol. 43443 [2]

Sept. 1, 1949

RECEIVED OF John Kuehl
    Fifteen . . . . . . . . . . . Dollars
$15/00                 Don R. Crabb
MADE IN U. S. A."

He said this was for full coverage for public liability and property damage for the year.

---

1. In the oral argument of this case we asked counsel for the parties the meaning of this statement—they did not know. There is nothing in the application or policy stating when premium is due other than the following: "In consideration of the payment of application fee and premium deposits as called for by Old Underwriters, Inc. . . ."

2. This is the number of the policy involved in this case.

About May 21, 1950 appellee was involved in an automobile accident in which the auto of one Kaperack was damaged. He notified appellant of the accident and on June 2, 1950 received a letter from it stating the policy had been cancelled September 6, 1949 for failure to pay six months premium of $22.00 Appellee then took the matter up with the Prosecuting Attorney of Clay County who wrote appellant to which it replied that Crabb was not its agent but a broker who represented appellee. This letter to the Prosecutor said it had not received the $15.00 paid by appellee to Crabb.

Subsequently, Kaperack filed an action against appellee for damages. He employed an attorney and spent some time in preparing his defense. Judgment against him for $110.00. He paid his attorney $150.00.

In the argument portion of its brief is is stated:

"Appellant concedes that the insurance policy in question was issued by appellant to John Kuehl, appellee, effective July 6, 1949. Appellant further concedes that if that insurance policy had not terminated for failure of consideration (failure to make the premium payments) and was still in full force and effect on May 21, 1950, when the automobile accident occurred, then appellant did have the obligation to defend plaintiff in the lawsuit filed against him and to pay the judgment rendered against him therein."

Appellant contends that there is no evidence that Crabb was its agent and had authority to accept premium payments or bind it in any way. It asserts that under the provisions of the policy the premium of $44.00 was payable at its office and the payment of $22.00 for six months from date of issue was payable at its office; that appellee knew this because it wrote him saying so and the policy provided payments were to be made at its office. (The letters of appellant to appellee on this subject were not introduced in evidence but were re-

ferred to in its letter to appellee denying liability for non-payment of premium and its letter to the Prosecutor.)

Among the cases cited by appellant in support of its contentions are: *Bankers Surety Company et al.* v. *German Investment and Securities Company* (1920), 189 Ind. 311, 126 N. E. 6; *McCaskey Register Co.* v. *Curfman* (1910), 45 Ind. App. 297, 90 N. E. 323; *The State Life Insurance Company* v. *Thiel* (1939), 107 Ind. App. 75, 20 N. E. (2d) 693; and *Jones et al.* v. *Kilborn et al.* (1954), 125 Ind. App. 88, 122 N. E. 2d 739.

In the Bankers Surety Company case, *supra,* appellee brought the action for money loaned to appellant evidenced by certain promissory notes. Appellant was surety on the bond of a contractor who had contracted with the City of Delphi for the construction of certain sidewalks, curbs, gutters, sewers, and, if required, certain retaining walls. The contractor defaulted and the Surety Company, to complete the job, through its general agent borrowed large sums of money from appellee. The question before the court was whether there was any evidence showing that said agent (if he did not have authority as such general agent) had special authority to borrow the money or that his acts were at any time ratified by it. The court, in affirming the judgment, said:

> "In determining whether or not the evidence supports the findings, it is proper to consider not only the direct evidence, but any evidence before the trial court tending to show the situation and circumstances present at the time of the alleged transactions."

While the facts in that case are different than those before us, we believe the foregoing rule should be our guide in this case.

The McCaskey case, *supra,* involved a written con-

tract of purchase which was complete in itself. The holding in that case is not applicable to the question presented here.

In the State Life Insurance Company case, *supra*, this court held that statements in a life insurance application and in receipt for first premium to the effect that insurance would be in force after approval of the application by its medical director at the Company's home office, could not be changed by oral agreement of the soliciting agent that the policy would be in force from the time applicant was passed by the local examining physician. In this case the question is whether payment appellee made to Crabb was equivalent to payment to appellant.

The Jones case, *supra*, involved the sale of automobiles between dealers. In several prior transactions pursuant to agreement payment was made directly by appellee to appellant. In the case before the court appellee had paid the salesman who delivered the car. In reversing the judgment of the trial court we held that where the established pattern of dealing between the parties leads to the conclusion that payment was to be made solely to the principal, the purchaser had unmistakable notice of the fact the agent was not authorized to receive payments. In this case it was disclosed appellee had paid agent of appellant for another policy.

Other cases cited by appellant are not of help in determining the question herein.

Appellee says it is a fundamental rule of agency that a principal is bound by his agent acting under apparent authority as well as actual authority; that the reason for such rule is that where one of two innocent persons must suffer because of the betrayal of a trust reposed in a third, the one who is most at fault should bear the loss. He further contends the fact that appellant named Crabb on its official receipt mailed to him from

its home office, and likewise named him as agent on the face of the policy sent to appellee by mail at the same time it mailed its receipt, is evidence that Crabb was its agent.

He further says that while policy provided that payments were to be made at appellant's office, it did not specifically forbid payments to its agents and that under the facts in this case it would be reasonable for him to believe that Crabb had such authority to collect the premium as appellant's agent.

He finally contends that it is the law in this state "that a waiver of the provisions of an insurance contract may be made by the conduct of the Company's agent, and that non-waiver clauses in insurance contracts may themselves be waived by the agents, and this may be done orally."

We are of the opinion that the facts set out above are clearly sufficient to show that Crabb was in this case the agent of appellant.

In *Wagner* v. *McCool et al.* (1913), 52 Ind. 124, 100 N. E. 395, this court held where the acts of a principal are such as to justify innocent third persons, who have relied thereon, in believing that the agent is authorized to do that which he does, although the agent in fact had no such authority, the principal is bound thereby, under the rule that where one of two innocent persons must suffer because of the betrayal of a trust reposed in a third, the person most at fault must bear the loss.

In *Travelers Insurance Company* v. *Eviston, Administrator* (1941), 110 Ind. App. 143, 37 N. E. 2d 310, the facts may be summarized as follows: Roy Shelton was, at the time of the occurrences herein referred to, eighty-one years of age and his wife Flora was seventy-two years of age. They were going from Logansport to Watertown, South Dakota to visit a son. They had to have their railroad ticket reservation validated at Chi-

cago. The railroad ticket agent in Chicago was also the agent of appellant. He asked them if they did not want a policy of insurance during the trip. They agreed and he prepared a separate policy for each of them. He put the policies in an envelope and handed them to the husband who placed them in his pocket without examination. The agent did not ask these parties how old they were when they were before him and purchased the policies. The space provided in the application for the age of the applicant was not filled in. The policy provided it did not cover any person over seventy years of age. On the trip the wife was fatally injured. In affirming a judgment in favor of the beneficiary, this court held provisions limiting power of agent of insurer to waive conditions or restrict the manner in which waivers may be made, do not supersede the law of waiver and estoppel, so as to prevent agents of insurer through whom it must act from binding the insurer by waiver of such a condition, viz: a non-waiver clause itself may be waived.

In *Aetna Insurance Company* v. *Indiana National Life Insurance Company* (1922), 191 Ind. 554, 563, 133 N. E. 4, the Supreme Court held the acts of an authorized agent of an Insurance Company, in the conduct of its business, may constitute a waiver of policy conditions, notwithstanding a stipulation in the policy against a waiver of such conditions by an officer, agent or representative of the Company, except by written endorsement on the policy.

In *Public Savings Insurance Company* v. *Manning, Administrator* (1915), 61 Ind. App. 239, 111 N. E. 945, this court held, although an industrial policy on plaintiff's child provided against waiver of any of its provisions except by indorsement signed by the president, vice-president, secretary or medical director of the company, a verdict for plaintiff was not precluded

even if the evidence were held to show a failure to keep the premiums paid as required by the policy, in view of evidence showing that after the time when the policy was alleged to have expired defendant's superintendent of agents called at plaintiff's home to discuss the policy and assured plaintiff that the policy had not lapsed and that it was only necessary for plaintiff to resume payment of the premiums, that thereafter plaintiff paid a premium and was given credit therefor in a book provided by defendant for such purpose, and that plaintiff, though at the time entitled to have the policy reinstated, was not advised by such superintendent or by the agent to whom he subsequently paid the premium that such course was necessary, since under the evidence the acts of such superintendent and agent must be deemed a waiver of the provision against forfeiture.

In *Continental Insurance Company* v. *Bain et al.* (1917), 65 Ind. App. 502, 114 N. E. 763, 116 N. E. 752, this court held a stipulation in an insurance policy that none of its provisions can be waived by an agent except by the consent of the company indorsed on the policy may itself be waived either by express agreement or by conduct; that where a fire insurance company, through its authorized agent, obtained knowledge of a mortgage on insured premises and agreed to place on the policy the requisite clause to make it payable to the mortgagee, but failed for seven months to so indorse the policy, the insurer waived the condition requiring its consent to be indicated in writing upon the policy.

With the foregoing authorities as our guide, we proceed to determine on the record herein whether appellee could have reasonably believed Crabb was the agent of appellant and had actual or apparent authority to collect the premium due on this

policy. As indicated herein, appellee had for sometime prior to the issuance of the policy sued on in this action dealt with appellant through Crabb in procuring and changing at least one other policy. He took the policy on the Studebaker through Crabb. It was Crabb who arranged the transfer of the coverage of that policy from the Studebaker to the Dodge. When appellant sent appellee the receipt and policy it did not tell him that it would not be responsible for payments made to its agent Crabb. When the payment of the premium it stated was due was not made it did not notify appellee that its policy was cancelled. Under these circumstances we believe appellee was justified in believing that Crabb, as the agent of appellant, had the authority to collect the premiums due on the policy in question here.

Finally, there is no merit to the contention of appellant, made for the first time in its reply brief, that the provisions of Ch. 56 of the Acts of 1949, §39-4501, Burns' 1952 Repl., defining the term "agent" as follows:

"Unless a different meaning appears from the context the wording 'agent' as used in this article, shall mean an individual . . . authorized by . . . law to do an insurance agency business, resident in this state, and lawfully authorized in writing by an insurance company to transact business as its representative."

establishes the fact that Crabb was not its agent because there was no evidence he was authorized in writing to act as its agent. The cited Act is an Act providing for the licensing of agents and brokers by the State. It fixes penalties for the violation of the provisions thereof.

For the reasons stated herein, the judgment is affirmed.

NOTE.—Reported in 141 N. E. 2d 858.